UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PKF MARK III INC., | : | Hon Joseph H. Rodriguez |
| PETER E. GETCHELL, STEPHEN P. | | |
| NEIDHART, CRAIG L. KOLBMAN, | : | |
| GLENN A. ELY, MITCHELL BALAND, | | |
| | : | Civil Action No. 08-1452 |
| Plaintiffs, | | |
| | : | |
| v. | | |
| | : | MEMORANDUM OPINION |
| FOUNDATION FOR FAIRCONTRACTING, | | |
| THOMAS ST. JOHN, NEW JERSEY | : | & |
| REGIONAL COUNCIL OF CARPENTERS, | | |
| ROBERT "SKIP" BOYCE, | : | ORDER |
| ROBERT TARBY, LOCAL 623 UNITED | | |
| BROTHERHOOD OF CARPENTERS AND | : | |
| JOINER OF AMERICA, ALBERT G. KROLL, | | |
| FRANK SPENCER, KEVIN P. MCCABE, | : | |
| | | |
| Defendants. | : | |

This matter has come before the Court on motions for summary judgment filed
by Defendant Albert G. Kroll, Esq. (Docket No. 125) and by Defendants New Jersey
Regional Council of Carpenters, Local 623 United Brotherhood of Carpenters and Joiner
of America, Robert "Skip" Boyce, Robert Tarby, Frank Spencer, and Kevin P. McCabe
(Docket No. 126).[1] Oral argument was heard on the motions on December 2, 2010, and
the record of that proceeding is incorporated here. For the reasons expressed on the
record of that date, as well as those set forth below, the motions will be granted in favor
of the Defendants.

_____

[1]Also named as Defendants are Foundation for Fair Contracting and Thomas St.
John.

I. BACKGROUND

Plaintiff PKF Mark III ("PKF") is a general contractor engaged in the business of construction of public works projects.  The individual Plaintiffs are Pennsylvania citizens, and officers and/or directors of PKF.  Defendant Foundation for Fair Contracting ("FFC") is allegedly a New Jersey organization; its executive director is Defendant Thomas St. John.  Defendant New Jersey Regional Council of Carpenters ("NJRCC") is a labor organization which operates through its representatives, Defendants Robert "Skip" Boyce, Frank Spencer, and Kevin P. McCabe.  Defendant Local 623, United Brotherhood of Carpenters and Joiners of America, is also a New Jersey labor organization, with Defendant Robert Tarby as representative/agent.  Collectively, these are the "Carpenter Defendants."  Defendant Albert G. Kroll is a New Jersey attorney, and representative/agent of unions affiliated with the Building and Construction Trades ("BCT"), including Local 623 and NJRCC.

In essence, Plaintiffs have alleged that the Defendants violated the Fifth and Fourteenth Amendments when they acted under color of state law in bringing spurious proceedings against Plaintiffs under New Jersey's Prevailing Wage Laws.  The Plaintiffs assert that the New Jersey Department of Labor ("DOL") essentially has ceded authority to the Defendants[2] to bring actions against employers who are alleged not to have paid

_____

[2] According to the Complaint, Defendants "have developed a close relationship with the representatives of the DOL to the point that the Defendants act as surrogates for the DOL, and the DOL suffers, permits, and approves them to act as its surrogates. In reality, the wage and fringe rates which DOL promulgates as the so-called "prevailing wages" are provided by the Defendants, and unions affiliated with the Building and Construction Trades Department of the AFL-CIO, and virtually no investigation is performed by the DOL to determine whether those wage and fringe rates are in fact the "prevailing" rates of pay. . . . [Defendants] have usurped the powers and duties of DOL, and DOL has in turn abrogated those powers and duties and has accepted that usurpation."  (Compl. ¶¶ 35 - 36.)

the appropriate wages. The Plaintiffs contend that the Defendants have brought meritless claims against them in order to harass them.  They further allege that the Defendants engaged in this conduct because they do not, but want to, represent the Plaintiffs' employees.

According to the Complaint, United Steelworkers AFL-CIO ("USW") is the exclusive representative of PKF's employees for collective bargaining purposes.  Thus, Plaintiffs' theory is that Defendants wish to displace USW as the exclusive collective bargaining representative of PKF's employees for purposes of collective bargaining for wages, hours, and other terms and conditions of employment.  To that end, Defendants allegedly acted under color of state law to expose PKF "to meritless and expensive audits, and debarment proceedings *brought by the DOL* arising out of the administration of the Prevailing Wage Laws."  (Compl. ¶ 39 (emphasis added).)

The Complaint contains five counts, each asserted against all Defendants.  Counts 1 through 3 are brought under 42 U.S.C. § 1983.  Count 1 alleges violation of the Plaintiffs' substantive due process rights.  Count 2 alleges violation of the Plaintiffs' procedural due process rights.  Count 3 alleges violation of the Plaintiffs' equal protection rights.  The Plaintiffs also bring two state law claims: interference with present and prospective contractual relationships (Count 4) and civil conspiracy (Count 5).

By way of the instant motions, the Defendants seek summary judgment because the conduct set forth as the basis of the Complaint does not constitute "state action," as required by section 1983.  A motion to dismiss based on this ground was denied by this Court in December of 2008, and discovery proceeded.

3

## II. DISCUSSION

A. <u>Summary Judgment Standard</u>

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." <u>Pearson v. Component Tech. Corp.</u>, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)); <u>accord</u> Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u>;

4

Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to
withstand a properly supported motion for summary judgment, the nonmoving party
must identify specific facts and affirmative evidence that contradict those offered by the
moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon
mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v.
Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting
Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot
be genuinely disputed by showing that "an adverse party cannot produce admissible
evidence to support the [alleged dispute of] fact."  Fed. R. Civ. P. 56(c)(1)(B); accord
Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role
is not to evaluate the evidence and decide the truth of the matter, but to determine
whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple
BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B.  Prevailing Wage Act Claims

Contractors and subcontractors performing work on a publicly owned project in
New Jersey worth more than $2,000 are required to pay "prevailing wage" to the
employees performing work on the project.  N.J. Stat. Ann. § 34:11-56.27.  Prevailing

5

wage is "the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to collective bargaining agreements, in the locality in which the public work is done." Id. at 34:11-56.26(9).  The prevailing wage differs among the various trade classifications.

The Commissioner of Labor is responsible for setting forth the prevailing wage rate on public construction projects for each craft, trade, or classification of worker, and is also charged with the duty of general enforcement of the wage and hour laws, including New Jersey's Prevailing Wage Act.  N.J. Stat. Ann. § 34:11-56.25.  The ultimate authority to debar a contractor lies with the Commissioner of Labor.  N.J.A.C. 12:60-7.3(a).

C.  State Action under 42 U.S.C. § 1983

Plaintiffs' Constitutional claims are governed by Title 42 U.S.C. § 1983, which does not, by itself, create substantive rights, but instead  provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution or created by other federal laws.  See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995); Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  A plaintiff asserting civil rights violations under Section 1983 "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  Groman, 47 F.3d at 638.

Thus, private parties may be liable under § 1983 only when they have acted under

color of law.  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting

Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)).  The "under color of state law"

requirement of 42 U.S.C. § 1983 has been treated identically to the "state action"

requirement of the Fourteenth Amendment.  See Mark, 51 F.3d at 1141 (citing United

States v. Price, 383 U.S. 787, 794 n.7 (1966); Lugar v. Edmondson Oil Co., 457 U.S. 922,

928 (1982); Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)).  State action exists under

§ 1983 only when it can be said that the government is responsible for the specific

conduct of which a plaintiff complains.  Mark, 51 F.3d at 1141-42.  "Put differently,

deciding whether there has been state action requires an inquiry into whether 'there is a

sufficiently close nexus between the State and the challenged action of [the defendants]

so that the action of the latter may fairly be treated as that of the State itself.'"  Id. at

1142 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

        To determine whether this nexus exists, the Third Circuit employs three broad

tests: (1) "whether the private entity has exercised powers that are traditionally the

exclusive prerogative of the state"; (2) "whether the private party has acted with the help

of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated

itself into a position of interdependence with the acting party that it must be recognized

as a joint participant in the challenged activity."  Kach v. Hose, 589 F.3d 626, 646 (3d

Cir. 2009) (quoting Mark, 51 F.3d at 1142 (other alterations, internal quotation marks

and citations omitted).  Under any test, "[t]he inquiry is fact-specific."  Groman v. Twp.

of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); see also Crissman v. Dover Downs

Entertainment, Inc., 289 F.3d 231, 234 (3d Cir. 2002) (en banc) (noting that "the facts

are crucial").

D. <u>Analysis</u>

Although the Complaint in this case pled Plaintiffs' causes of action along with

the requisite elements, including State action, (see Compl., ¶¶ 39, 68, 72, 77), alleging

that Defendants "control, influence, or direct the DOL," that they essentially have

"usurped" the DOL to become the State actors in this case, (Compl., ¶ 40; see also ¶ 49),

the evidence of record at this stage of the proceedings is insufficient for Plaintiffs to

survive summary judgment.  There is no evidence of a pre-arranged plan by which the

DOL substituted the judgment of the Defendants[3] for its own official authority, thereby

"draping" the Defendants with the power of the State.  See <u>Robb v. City of Philadelphia</u>,

733 F.2d 286, 292 (3d Cir. 1984) (finding such sufficient).

Plaintiffs alleged that the Carpenter Defendants, through FFC and Thomas St.

John, conducted an independent investigation of PKF's alleged failure to pay prevailing

wages on public construction projects in New Jersey, and then obtained the DOL's

acquiescence to the Carpenter Defendants findings, resulting in the DOL seeking

debarment of the Plaintiffs.  As to Defendant Kroll, Plaintiffs' theory is that he used his

status as a former Commissioner of the DOL to unduly influence the DOL to institute

---

[3]The Court is mindful that labor unions generally are not regarded as state actors
for the purposes of § 1983.  See <u>Figueroa v. City of Camden</u>, 580 F. Supp.2d 390, 401
(D.N.J. 2008) (citing, inter alia, <u>Jackson v. Temple Univ.</u>, 721 F.2d 931 (3d Cir. 1983)
(affirming summary judgment where plaintiff failed to provide evidence of state action
in union's failure to take grievance to arbitration); <u>Johnson v. Int'l Bhd. of Teamsters,
Local 830</u>, 256 Fed. Appx. 481, 483 (3d Cir. 2007) ("[L]abor unions are generally not
state actors-they are private entities.")).  An "exception to this generalization" has been
recognized, however, "when the unions have affirmatively conspired with the state to
deprive a plaintiff of his rights."  <u>Id.</u> (citing <u>Johnson v. Int'l Bhd. of Teamsters, Local
380</u>, 2007 WL 775604, No. 06-3699 (E.D. Pa. Mar. 8, 2007), <u>aff'd</u> 256 Fed. Appx. 481
(3d Cir. 2007)).

debarment proceedings against PKF for violations of the prevailing wage laws.  Kroll served as Commissioner from January 2002 through June 2004.  His law firm has been legal counsel to the NJRCC since January 2005.

The record indicates that complaints alleging violations of the prevailing wage laws are customarily filed with the DOL by labor organizations on behalf of workers employed on public construction projects.  (Kroll Aff., ¶ 10; Katz Dep. Transcript, p. 17.) Once the DOL receives a complaint alleging violations of the prevailing wage laws, an investigator from the DOL will be assigned to the case.  (Kroll Aff., ¶ 11; Katz Dep. Transcript, p. 17-18.)  That investigator will typically solicit information from both the complaining party and the contractor, and will often visit the job site and contractor's office.  (Id.)

The DOL investigator will then draft a report and recommendation, to be reviewed by his or her supervisor and/or the Assistant Commissioner of Labor in charge of Labor Standards and Safety Enforcement.  (Kroll Aff., ¶ 11.)  At this stage, it is not uncommon for both the complaining party and the contractor to "plead" their cases to the supervisor and/or the Assistant Commissioner authorized to review the charges. (Kroll Aff., ¶ 12; Katz Dep. Transcript, p. 18-19.)

For example, in 2002, the DOL received a complaint from a plumbers' local union regarding PKF's failure to pay the appropriate wages and benefits to its employees on a public project in Trenton.  Ronald Tobia, labor counsel to PKF, met with then-Commissioner Kroll, and Kroll decided not to seek debarment of PKF at that time because there was only one "prior violation" on PKF's record for work performed in 1999-2000 on a highway project (Route 29) for the Department of Transportation.

(Kroll Aff., ¶ 17.)  The 2002 complaint settled with PKF paying the prevailing wage differential of $37,342, as well as a fee of $6,721 and an administrative penalty of $5,000.  (Kroll Aff., ¶ 21.)

In 2004, a recommendation for PKF's debarment was brought to then-Commissioner Kroll's attention, and Kroll asked his Assistant Commissioner to prepare a memorandum outlining PKF's past history with prevailing wage violations.  (Kroll Aff., ¶ 21.)  At that point, the Assistant Commissioner found that there were two "prior violations" on PKF's record, so Kroll decided to debar PKF, but PKF and its officers requested a hearing before New Jersey's Office of Administrative Law.  (Kroll Aff., ¶ 22.)  The OAL commenced disbarment proceedings, but the case resulted in a formal settlement agreement between PKF and then-Commissioner of the DOL Thomas Carver.  (Kroll Aff., ¶ 24.)  PKF agreed to pay $58,096.02 in unpaid wages and penalties for prevailing wage violations.  (Kroll Aff., ¶ 24.)

In 2004, however, a plumbers' local union brought a prevailing wage violation complaint against PKF for two separate projects – the Route 29 Tunnel project and the Monmouth Beach Plant Expansion and Upgrade project.  (Kroll Aff., ¶ 20.)  The DOL investigator assigned to the case determined that PKF failed to pay a total of $64,684 due to fourteen workers on the Route 29 project, and $105,404 due to sixteen workers on the Monmouth Beach project.

On September 27, 2005,[4] Thomas St. John of FFC wrote to the DOL, advising the

_____

[4]        At some point after the 2005 complaint was filed, Plaintiffs Peter Getchell, President of PKF, and Neidhart, along with their counsel, Ronald Tobia, met with Defendants Frank Spencer and Kroll to discuss the possibility of PKF signing a collective bargaining agreement with the Carpenters union.  (Spencer Aff., ¶ 4.)  During that

DOL of potential wage violations committed by PKF at the Driscoll Bridge widening and expansion projects.[5]  At this point, the DOL considered PKF to have had three prior violations of the prevailing wage laws.  (Katz Dep., p. 46, 60.)  Accordingly, the DOL launched an investigation into PKF's payroll practices, conducting field visits, speaking with witnesses, and reviewing documents.

The only communications the NJRCC or its officers had with the DOL during the time the DOL was investigating PKF as a result of the 2005 complaint was to ascertain the status of the complaint against PKF.  (Tarby Aff. ¶ 12-13.)  At no time during the investigation of PKF did Kroll contact the DOL in an attempt to influence the DOL in its decision to debar PKF.  (Kroll Aff., ¶ 26, 29, 32.)  In fact, Assistant Commissioner of

---

meeting, Getchell asked Spencer whether PKF's "problems" with the DOL would go away if PKF signed a collective bargaining agreement with the Carpenters.  (Spencer Aff., ¶ 5; Getchell Dep., p. 45.)  Spencer answered by saying that if PKF signed with the Carpenters, Spencer and the NJRCC would advocate for PKF in any forum, just as they do for any union contractor.  (Spencer Aff., ¶ 6.)  Spencer has denied saying that PKF's problems with the DOL would disappear if PKF signed with the Carpenters, (Spencer Aff. ¶ 7), and Getchell acknowledged that Spencer did not make any statement regarding the position of the DOL with respect to its investigation of PKF's prevailing wage violations. (Getchell Dep., p. 46.)  Indeed, Getchell testified that both Spencer and Kroll were non-committal. (Getchell Dep., p. 45.)  Getchell declined to employ members of the Carpenters union on the Driscoll Bridge projects, instead utilizing Steelworkers. (Getchell Dep., p. 49.)

[5]One of the bases for FFC's complaint was that Antonio Moreira, who worked for PKF on the Driscoll Bridge project, was misclassified as a laborer, when he allegedly performed dock builders work.  Neither Moreira nor his local union filed a greivance during the Driscoll Bridge project.  FFC submitted additional affidavits and complaints on behalf of four other individual laborers who were members of that local union, Local 472.  The Plaintiffs have alleged that these individuals were misled by St. John and FFC because St. John identified himself to one of them, Santos Martinez, Jr. as "working for the State."  (Martinez Dep., p. 8.)

Labor Leonard Katz[6] testified that Kroll had absolutely no influence on the DOL's decision to seek debarment against PKF in 2006, and that Katz did not even have a conversation with Kroll regarding PKF's debarment prior to the date when the DOL issued its notices of intent to revoke PKF's license.  (Katz Dep., p. 47-48.)  Similarly, Katz testified that he had no communication with the Carpenter Defendants on the issue of whether to debar PKF.  (Katz Dep., p. 74-75.)  Again, Katz testified that the Carpenter Defendants had no influence on the DOL's decision to seek debarment against PKF in 2006.  (Katz Dep., p. 83-84.)  Further, the Carpenter Defendants were granted no unique, unequal, or unfair access to the DOL, and in no way does or did the NJRCC control the DOL in its investigation of prevailing wage violations.  (Katz Dep., p. 58-61.)

Katz's testimony regarding the Driscoll Bridge investigation is supported by the report submitted by the DOL field representative.  That report indicates that after receiving the affidavits of the employees involved, on November 3, 2005, the field investigator went to PKF's office to obtain documents such as copies of certified payrolls, a sampling of benefits paid to employees, and a copy of the contract.  PKF supplied all paperwork to the DOL by December 23, 2005.  In early January of 2006, the field investigator conducted telephone interviews with three of the individuals, who all confirmed that they were performing work that should have been paid at a higher prevailing wage rate than they had received.[7]

_____

[6]Katz served as Assistant Commissioner of Labor for Labor Standards at all times relevant to this litigation.  (Katz Dep., p. 11-12.)  He has been employed by the DOL for approximately 41 years.  (Katz Dep., p. 5.)

[7]Katz detailed this alleged misclassification in a September 19, 2006 memorandum to Commissioner David J. Socolow.

On or about February 7, 2006, the DOL issued notices of its intent to debar PKF, along with its individual officers, Getchell, Neidhart, Kolbman, Ely, and Baland, based on PKF's past violations of the prevailing wage laws. (Katz Dep., p. 73-74.) The matter proceeded to a hearing before the OAL, and Plaintiffs ultimately prevailed.

On April 20 and 21, 2006, after debarment proceedings had begun, Kroll wrote to Arbitrator JJ Pierson and then-Commissioner of the DOL David Socolow "in response to false statements made by PKF's counsel." (Kroll Br., p. 16.) Neither letter influenced the DOL in its position with respect to the Driscoll Bridge investigation and debarment proceeding. (Katz Dep., p. 55.) Other than these two letters, written after the notices of intent to revoke PKF's license, the DOL had no contact with Kroll regarding its decision to debar PKF. (Katz Dep., p. 81.)

There is no evidence of any improper relationship between the Defendants and the DOL. Assistant Commissioner Katz has testified that all parties involved in this case were afforded equal "unfettered" access to the DOL. (Katz Dep., p. 11-12, 19-22, 65.) Counsel for PKF, Ronald Tobia, similarly testified that he routinely had conversations with the DOL in an attempt to persuade the DOL not to seek debarment and/or to amicably resolve the cases. (Tobia Dep., p. 47-48.)

In response to the instant motions for summary judgment, Plaintiffs have argued that discovery in this case "has barely begun" because non-party DOL had objected to certain discovery requests of the Plaintiffs. (Pl. Br., p. 1-2.) Notably, Plaintiffs have not filed a Rule 56(d) motion.

Originally, fact discovery was to end on February 29, 2009. On approximately April 20, 2009, Plaintiffs served a document subpoena on the DOL, not a party to this

lawsuit.  The subpoena asked the DOL essentially to produce all of its prevailing wage investigation files, whether related or unrelated to the parties in this case, dating back to January 1, 2002.  The DOL did not immediately respond to the subpoena.  During an August 18, 2009 telephone conference with Magistrate Judge Ann Marie Donio, the discovery deadline was extended informally to September 30, 2009.  On September 19, 2009, Plaintiffs filed a motion to compel the production of documents.  In the interim, the Carpenter Defendants conducted paper discovery and deposed Katz and Tobia.  Defendants have argued that they also tried to depose the Plaintiffs, but the Plaintiffs refused to set dates for the depositions.

During a case management conference on October 7, 2009, Judge Donio granted Plaintiffs' second informal request, extending discovery to December 30, 2009.  Plaintiffs filed a motion for extension of discovery on December 1, 2009, and by Order of January 6, 2010, Judge Donio extended discovery for a third time to March 31, 2010.  On March 25, 2010, Plaintiffs produced their Rule 30(b)(6) witness, and on March 26, produced Getchell for depositions.  Defendants assert that they made their witnesses available on countless dates, but Plaintiffs refused to schedule their depositions.  During a May 12, 2010 telephone status conference, discovery was extended, for the fourth time, to August 31, 2010.  On June 7, 2010, Plaintiffs filed a motion for a fifth extension of discovery.  Plaintiffs also filed a motion to compel the DOL to produce documents requested in their subpoena.[8]  Magistrate Judge Donio heard oral arguments on the

---

[8]Defendants have argued that the DOL produced every document it had related to Plaintiffs and Defendants in this case by June of 2010.  The further documents requested were records of other routine debarment investigations performed by the DOL from 2004 through 2006.

motions, and ordered the DOL to produce documents from 2004, 2005, and 2006, in addition to seventy supplemental files, by September 14, 2010.  She also extended fact discovery to November 1, 2010.  On October 25, 2010, Plaintiff's moved again for an extension of time to complete discovery; that motion remains pending.

Plaintiffs have asked for a new discovery deadline of January 31, 2011, and leave of Court to depose more than ten party and non-party witnesses, including Kroll, McCabe, Boyce, Spencer, Socolow, and others.  Plaintiffs have argued that they waited until receipt of the last of the documents from the DOL so that those documents could be reviewed by counsel prior to the depositions in question.  On September 1, 2010, the Court had verbally instructed Plaintiffs to begin taking depositions.  As of October 25, 2010, Plaintiffs had taken three.[9]

Extensions of discovery are matters solely within the province of the trial court's discretion.  <u>Petrucelli v. Bohringer and Ratzinger</u>, 46 F.3d 1298, 1310 (3d Cir. 1995).  Although this is the third formal motion to extend discovery, it is the sixth request from Plaintiffs to do so.  Defendants and their witnesses were made available for deposition.  There is no explanation why Plaintiffs did not schedule any of the proposed depositions within a reasonable time after they reviewed the DOL's initial and supplemental document productions.  The record already contains the deposition of Leonard Katz,

---

[9]Plaintiffs deposed Defendant St. John on September 30, 2010.  On October 8, 2010, Plaintiffs deposed DOL representative Robert Gaines, who testified he had no knowledge of the DOL's investigation of PKF or of this lawsuit.  His knowledge was strictly limited to his involvement in responding to the subpoena issued to the DOL.

Plaintiffs deposed Tarby on October 15, 2010.  Boyce was scheduled for a deposition on October 14, 2010, but had to cancel due to an emergency medical procedure.  Although the defense offered several dates to reschedule the deposition before the close of discovery, Plaintiffs did not do so.

who worked for the DOL for 41 years.  He testified that the DOL did their own field investigation in this case.

Not only is there no evidence of record tending to support the allegation that Defendants' conduct constituted State action, Plaintiffs have not even articulated whether their theory is that (1) Defendants exercised powers traditionally the exclusive prerogative of the State; (2) the State and the Defendants act in concert or jointly to deprive Plaintiffs of their rights; (3) the Defendants and the DOL have a symbiotic relationship as joint participants in the unconstitutional activity.  Plaintiffs have merely asserted that there was state action "under any language that a Court may choose to employ."  (Pl. Br., p. 26.)  The record reflects that the DOL retained the ultimate decision-making responsibility and power, there was no conspiracy to deprive Plaintiffs of any rights, and there was no interdependence between the Defendants and the DOL.  Because Plaintiffs have not met their burden to show State action, summary judgment will be granted in favor of the Defendants on the claims brought pursuant to 42 U.S.C. § 1983.  Further, the Court declines to exercise supplemental jurisdiction over the State law causes of action.

### III. CONCLUSION

For these reasons, as well as those placed on the record during oral argument,

IT IS ORDERED on this 21st day of December, 2010 that the Defendants' motions for summary judgment [125, 126] are hereby <u>GRANTED</u>.

IT IS FURTHER ORDERED that the Plaintiffs' discovery motion [166] is hereby <u>DENIED</u>.

 /s/ Joseph H. Rodriguez  
JOSEPH H. RODRIGUEZ  
U.S.D.J.
